IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY COLLINSWORTH, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:04-CV-1397-M |
| | § | |
| AIG LIFE INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timothy Collinsworth brings this action against Defendant AIG Life Insurance Company under the Employee Retirement Income Security Act ("ERISA") for denial of employment benefits. Specifically, Plaintiff avers that (1) Defendant misconstrued Plaintiff's insurance policy; (2) Defendant abused its discretion in reaching its factual determinations; (3) Defendant's denial letter does not comply with ERISA; and (4) Defendant's claims procedure is defective. Plaintiff requests that the Court award the benefits due Plaintiff, and further requests attorneys' fees. Both Plaintiff and Defendant filed separate motions for summary judgment. Based on the reasoning below, the Court holds that Defendant's benefit determination fails the Court's *de novo* review; remands the claim to Defendant for further determination consistent with this opinion; and denies Plaintiff's request for attorneys' fees.


I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Timothy Collinsworth began his career with Lucent Technologies on June 12, 1972. (Pl. Resp. at 2).  In 2000, Plaintiff's division of Lucent Technologies was acquired by Tyco International (US), Inc. (Pl. Compl. at 2).  Plaintiff started work at Tyco on December 8,

1

2000. *Id.* While employed at Tyco, Plaintiff enrolled in a long-term disability group insurance plan that took effect in 2001. (Pl. Resp. at 3; PAE 658[1]). In accordance with 29 U.S.C. § 1022, Tyco provided Plaintiff with a summary plan description ("SPD"), that described the disability insurance policy issued by Defendant and other Tyco benefit plans.

On July 1, 2001, Plaintiff fell while on his backyard patio. (Pl. Resp. at 3, Def. Br. at 2). Plaintiff submitted a proof of loss form to Tyco on or about August 28, 2002. (Def. Br. at 2). Among other things, the proof of loss described Plaintiff's physical and mental troubles since the accident. (Def. Br. at 2, Pl. Resp. at 5). Plaintiff attached to the proof of loss notes of Dr. Satish Goyal, Plaintiff's treating physician, which described Plaintiff's pain, and which show that Dr. Goyal concluded that Plaintiff was "totally disabled." (Pl. Resp. at 5).

Defendant began examining Plaintiff's claim on September 16, 2002. (Def. Br. at 3). On reviewing Plaintiff's medical history, Defendant discovered that Plaintiff had suffered a left-hemispheric stroke in 1986. (Def. Br. at 3, Pl. Resp. at 2). On October 25, 2002, Defendant asked that Dr. Michael Seals examine Plaintiff. (Def. Br. at 3.) Dr. Seals met with Plaintiff, and sent examination results to Defendant in November 2002. (Def. Br. at 3, Pl. Resp. at 8-10). On December 24, 2002, Defendant informed Plaintiff that a psychiatrist, Dr. Ewald Horwath, would review his records. (Def. Br. at 4). About a month later, Defendant received Dr. Horwath's psychiatric report. (*Id.*)

In February 2003, Defendant denied Plaintiff long-term disability benefits, citing, among other things, the reports of Drs. Seals and Horwath. (*See* Def. Br. at 4). Plaintiff gave notice of

---

[1]PAE stands for "Plaintiff's Appendix of Evidence."

appeal to Defendant in March 2003. *Id.* Defendant's internal appeals committee denied the

appeal in August 2003. Plaintiff filed this suit on June 28, 2004.


## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate when the pleadings and record evidence show that no genuine issue of material fact

exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*,

37 F.3d 1069, 1075 (5th Cir. 1994).  In a motion for summary judgment, the burden is on the

movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French

Labs.*, 919 F.2d 301, 302 (5th Cir. 1990).  If the moving party meets this initial burden, then the

burden shifts to the nonmovant, who must produce evidence establishing a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 321-22 (1986).  This burden is not met by mere

reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan

Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the nonmoving party fails to make

a showing sufficient to establish the existence of an element essential to his case, and on which

he bears the burden of proof at trial, summary judgment is mandatory. *Id.* at 322-24.  The record

must be considered in the light most favorable to the nonmovant. *Harrison v. Byrd*, 765 F.2d

501, 504 (5th Cir. 1985).


## III. ANALYSIS

### A. STANDARD OF REVIEW OF ERISA BENEFITS DETERMINATION

The United States Supreme Court has held that the denial of benefits under an ERISA

plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Discretionary

authority cannot be implied; an administrator has no discretion to determine eligibility or to

interpret the plan unless the plan language expressly confers such authority on the administrator.

*See Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558-59 (5th Cir. 1990).

Courts should not look for specific words or incantations; rather, courts should determine the

breadth of the administrator's power from the plan language. *Wildbur v. Arco Chem. Co.*, 974

F.2d 631, 637 (5th Cir. 1992). At a minimum, a plan construed as providing such discretion

should convey that an administrator is entitled to construe, interpret, or otherwise exercise

discretion in determinations of plan members' eligibility for benefits or in interpreting the plan.

*McClure v. Vice President, Human Resources, Union Carbide Corp.*, Civ.A. H030054, 2005 WL

1214645, at *9 (S.D. Tex. May 20, 2005) (citing *Cathey*, 907 F.2d at 559).

  In this case, neither the SPD nor the policy specifically confers discretionary authority on

Defendant. (Def. Reply at 4). In situations where the plan does not expressly give the

administrator discretion, Defendant asserts that the Court can look to other manifestations of the

parties' intent to find a grant of discretion. (*See* Def. Reply at 4 (citing *Bruch*, 489 U.S. at 112-

13.)) The SPD affirmatively grants discretion to another entity, the Tyco Benefits Review

Committee.[2] PAE 823. Defendant asserts that "[i]t is clear that Plaintiff's former employer Tyco

. . . who sponsored the SPD, intended that AIG Life have such discretion as the plan

administrator." (Def. Reply at 5). To support this assertion, Defendant offers the affidavit of

---

[2]"The Tyco Benefits Review Committee shall have the discretionary authority to
determine eligibility for plan benefits and to construe the terms of the plan, including the making
of factual determinations." PAE 823.

Karen Christiansen, the Corporate Benefits Manager at Tyco. Christiansen avers that the reference to the "Tyco Benefit Review Committee" in the SPD "was intended only for the self-insured plans administered by [Tyco]." (Aff. at 1). As a result, she states, the Tyco Benefits Committee does not have discretionary authority over the instant plan; rather, such authority is vested in the Defendant. (Aff. at 1-2).

Whether or not the Christiansen affidavit is properly considered at this stage,[3] the Court finds that neither the SPD nor the policy confers discretionary authority on Defendant. Defendant has referenced no language in the SPD or the policy that entitles AIG Life to "construe, interpret, or otherwise exercise discretion in determinations of plan members' benefits eligibility or to interpret the plan." Under *Cathey* and *McClure*, no such discretion can be found. In the Court's view, Defendant misreads *Bruch*. Where the plan does not expressly give the administrator discretion, courts look to the terms of the plan and other manifestations of the parties' intent to determine whether the claimant is eligible for benefits – this is the essence of a *de novo* review. In contrast, a search for other manifestations of the parties' intent to determine whether the administrator has discretion to construe the claims is effectively searching for an implied grant of discretion, which is prohibited by *Cathey*. *See* 907 F.2d at 559.

Because neither the SPD nor the policy expressly grants discretionary authority to Defendant, the court reviews *de novo* Defendant's denial of Plaintiff's benefits. Under this standard, the court will interpret and apply the SPD and policy language "'in an ordinary and

---

[3]On June 13, 2005, Plaintiff filed his "Motion to Strike Affidavit of Karen Christiansen," asserting that the Court should not consider the affidavit because Defendant did not disclose or produce the affidavit, the author, or the subject matter of the affidavit during the discovery period. Because the Court need not reach the merits of the Motion, the Court declines to address it.

popular sense as would a person of average intelligence and experience,' such that the language is given its generally accepted meaning." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (quoting *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 n.1 (5th Cir. 1995)); *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, No. 04-10761, 2005 U.S. App. LEXIS 20219, *14 (5th Cir. Sept. 20, 2005) ("SPDs must be read and interpreted from the perspective of a layperson."). Federal common law governs the construction of policy provisions governed by ERISA. *Wegner*, 129 F.3d at 818. The court will apply the rule of *contra proferentum* if plan terms remain ambiguous after the application of ordinary principles of contract interpretation. *Id.*; *see Harris Methodist Fort Worth*, 2005 U.S. App. LEXIS 20219 at *8. Under this rule, the Court resolves ambiguities in the contract against the drafter. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 640 (5th Cir. 1999). Finally, "if there is a conflict between the summary plan description and the terms of the policy, the summary plan description will govern." *Id.* (citing *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991)). The rule of *contra proferentum* that applies to ambiguous policy terms applies with equal force to ambiguous terms in the summary plan description. *Id.* at 640-41.

Defendant correctly notes, however, that whether or not discretionary authority is granted to the administrator, the Court applies an abuse of discretion standard of review to an administrator's factual findings. *See Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 332 (5th Cir. 2001); *Collinsworth v. Hartford Life & Accident Ins. Co.*, No. 3:03-CV-0457-M, 2004 WL 1217935, *1 (N.D. Tex. June 2, 2004) (Lynn, J.). Under this standard, a decision is overturned if it is found "arbitrary or capricious;" it is affirmed if it is supported by substantial evidence. *See Meditrust Financial Servs. Corp. v. Sterling Chems., Inc. Med. Benefits Plan for Hourly-Paid Employees*, 168 F.3d 211, 214-15 (5th Cir. 1999). Once the facts are determined,

however, the Court will undertake a *de novo* review of the administrator's ultimate benefits

conclusion, based on those factual determinations. *McClure*, 2005 WL 1214645 at *10.

## B. CORRECT INTERPRETATION OF THE PLAN

The parties dispute the meaning of several terms of the plan. First, the parties dispute the

effect of the SPD disclaimer, which states that if the SPD and the policy conflict, the policy

controls. Second, the parties contest the meaning of the word "injury;" specifically, they disagree

as to whether or not it includes a requirement that the accident "directly and independently"

causes the injury. Third, the parties contest the role of preexisting conditions in determining

benefit eligibility.

The SPD contains the following disclaimer: "In the case of any discrepancy between this

SPD and the official plan documents, the official plan documents always govern." PAE 661.

This disclaimer fails as a matter of law. The Fifth Circuit addressed a similar disclaimer in

*Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991). In that case, the defendant urged

that the court recognize a disclaimer, printed in the SPD, which stated that when the policy

conflicts with the SPD, the policy should govern. *Id.* at 981. The circuit court held that

recognizing such a disclaimer would defeat the requirement under 29 U.S.C. § 1022 that a

summary plan description be provided. *Id.* If the court gave effect to such a disclaimer,

> [t]he result would be that before a participant in the plan could make any use of the summary, she would have to compare the summary to the policy to make sure that the summary was unambiguous, accurate, and not in conflict with the policy. Of course, if a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all.

*Id.* at 971-72. Recognizing a disclaimer that would allow the policy to trump the terms of the SPD would "eviscerate" the requirements of § 1022. *See id.* The disclaimer, therefore, does not affect this Court's analysis.

The Court next examines the terms of the SPD. The "Personal and Family Accident Insurance" ("PFAI") section of the SPD contains the language most important to this case:

> You are eligible for 100 percent of your covered amount after one year if you are under age 70 and become permanently and totally disabled as the result of a covered accident, provided:
> -       You become totally disabled (meaning you are unable to do your job) within 365 days of the date of your accident;
> -       Your disability lasts for at least 12 months; and
> -       You are then declared to be permanently and totally disabled.
> *Permanently and totally disabled* means that your disability prevents you from engaging in any occupation or employment for which you are qualified through education, training, or experience for the rest of your life.

PAE 789. The same section further provides, under the heading "What the Personal and Accident Plan Does Not Cover":

> Certain losses are not covered by the Personal and Family Accident Plan including, but not limited to, losses caused by or resulting from:
> -       Suicide or attempted self-destruction, while the person is sane or insane;
> -       Disease of any kind;
> -       Bacterial infection, except certain infections that occur in or because of an accidental cut or wound;
> -       Military service in the armed forces of any country or international authority; or
> -       Declared or undeclared war or any act of war.

PAE 792. A sidebar in the margin to the left of the main text on the first page of the same section states: "When you apply for Personal and Family Accident coverage, you are not required to provide evidence of insurability (proof of good health) for yourself or your family members." PAE 786.

The court must determine the "generally accepted meaning"a "person of average intelligence and experience" would give to these provisions. *Wegner*, 129 F.3d at 818. Reading the first segment quoted above, (PAE 789), an average person would realize that not all accidents will trigger the policy provisions -- only "covered accidents" qualify. To determine what accidents do not qualify, an average person would turn to the provision entitled "What the Personal and Accident Plan Does Not Cover." This segment lists five expressly nonexclusive categories of accidents not covered by the policy.

The sidebar language on the first page of the PFAI, referencing evidence of insurability, requires comparison with other SPD sections to be fully understood by a person of average intelligence and experience. The Fifth Circuit requires courts to read the summary plan description as a whole when determining the meaning of individual phrases. *See Rhorer*, 181 F.3d at 642;[4] *Harris Methodist Fort Worth*, 2005 U.S. App. LEXIS at *8. Without referencing the other SPD sections, the meaning of the sidebar could seem ambiguous to one of average intelligence and experience. First, the sidebar could mean that no preexisting conditions preclude coverage -- because "proof of good health" is not necessary to receive coverage, past injuries or medical conditions would not affect future benefit determinations. In contrast, it could be read narrowly, telling the policyholder to limit what documents he submits with his insurance application, but not addressing the question of whether prior health conditions would limit

---

[4]"Thus, when we read the summary plan description as a whole, we see that some benefits are expressly conditioned on an active work requirement, while others are not. Moreover, we see that very same inconsistency in the life insurance section, where only basic life insurance seems to be restricted by the active work requirement. All of this suggests to the reader that not all benefits under the plan are governed by an active work requirement, and that individual sections of the summary plan description must be consulted to determine whether a particular benefit carries the requirement." *Rhorer*, 181 F.3d at 642.

coverage or issuance. The person of average intelligence and experience would have to decide

whether the placement on the page (in the margin, outside of the main text) affects the scope of

the language, further adding to the uncertainty.

Similar language appears in the "Long-Term Disability" ("LTD") section of the SPD.

PAE 750-765. On the second page of this section, the following language appears in the sidebar:

> Provided you enroll in the LTD plan within 31 days of your eligibility date, you will not
> be required to provide evidence of insurability (proof of good health). If you apply for
> LTD coverage at any other time, you must provide evidence of insurability at your own
> expense. In this case, the insurance company must approve your application, including
> your evidence of insurability, before your coverage will begin.

PAE 754. Furthermore, language concerning preexisting conditions appears later in the LTD

section:

> If you have a preexisting condition, you are not eligible for any benefits if that condition
> results in a disability during the first 365 days that you are covered under this plan. A
> *preexisting condition* is:
> - Any accidental bodily injury, sickness, mental illness, pregnancy, or episode of
>   substance abuse; or
> - Any manifestations, symptoms, findings, or aggravations related to, or resulting
>   from, such accidental bodily injury, sickness, mental illness, pregnancy, or
>   substance abuse.
> for which you received medical care during the 90-day period before your coverage
> under this plan began.

*Id.* at 755. The statements about "evidence of insurability" in the LTD section and the PFAI

section differ markedly: in the LTD section, proof of good health is needed in *some* situations,

while no such limitations are referenced in the sidebar in the PFAI section. *Compare* PAE 754

*with* PAE 786. In addition, the limitations expressly applicable to preexisting conditions are

delineated in the LTD section, while there is no mention of "preexisting conditions" in the PFAI

section. Because the PFAI section does not contain any analogous carve-outs, an average plan

participant would not import these limitations into the PFAI section. As a result, an average

person would read the "evidence of insurability" statement as providing that insurance benefit determinations are not affected by any preexisting conditions.[5] *Cf. Rhorer*, 181 F.3d at 642.

In summary, a person of average intelligence and experience would read the PFAI section to provide benefits if the policyholder becomes permanently and totally disabled as a result of a future covered accident. Accidents that fall within the five broad categories enumerated at the end of the section are not covered, but preexisting conditions do not affect coverage for future accidents.

Defendant argues that an injury is only covered if it is direct and independent from all other causes, citing the policy.[6] (Def. Br. at 8.) In addition, Defendant argues that following exclusionary language in the policy applies:

> The policy does not cover any loss caused in whole or in part by, or resulting in whole or in part from, the following: . . . sickness, disease, or infections of any kind; except bacterial infections due to an accidental cut or wound, botulism, or ptomaine poisoning ...

Coll. BSC 009. From this language, Defendant urges that if a disease or sickness is a contributing cause to the loss, there is no coverage under the insurance policy. (Def. Br. at 11 (citing *S. Farm Bureau v. Moore*, 993 F.2d 98, 102-03 (5th Cir. 1993))).

If the SPD and the policy conflict, the terms of the SPD control. *Rhorer*, 181 F.3d at 640. Furthermore, if there is any ambiguity in the summary plan description, it must be resolved in

---

[5]In any case, a reasonable plan participant could not read the summary plan description and know with any degree of certainty whether his accident coverage was restricted by specific previous conditions. In such a case, the ambiguity in the SPD must be resolved in the policyholder's favor, *Rhorer*, 181 F.3d at 642.

[6]"**Injury** - means bodily injury caused by an accident occurring while the Policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss." Coll. BSC 006. ("Coll BSC" refers to the pagination used by Defendant in section A of exhibit 2, provided in Defendant's appendix.)

favor of the policyholder. *Id.* at 640-41. For the sake of argument, the Court will assume that Defendant correctly construes the accident limitations in the policy: an injury does not trigger the policy if either (1) the injury is not the direct and independent cause of the disability; or (2) a disease or sickness is a contributing cause to the loss.

The Court finds that the "direct and independent" limitation proposed by Defendant does not apply to the policyholder. The SPD states that Tyco will provide benefits if the policyholder becomes permanently and totally disabled *as a result* of a covered accident. There is no language in the SPD that the accident must be a "direct and independent cause" of the disability. The "as a result" language is ambiguous. An average policyholder *could* glean from this that the accident must be the sole or primary cause of the disability. On the other hand, he could understand that coverage will be provided if a covered accident triggered the disability, without being the sole or primary cause. Because the "result" language is ambiguous, it must be resolved in favor of the policyholder. Therefore, the Court finds that an accident need only contribute to the disability to qualify for benefits; it need not be the "direct and independent" cause of the disability.

Likewise, the "contributing cause" limitation urged by Defendant does not apply. First, the "contributing cause" language finds no support in the SPD. When discussing exclusions, the SPD states that "[c]ertain losses are not covered . . . including, but not limited to, losses *caused by or resulting from . . ."* PAE 792. "[C]aused by or resulting from" is ambiguous. An average policyholder would not be able to discern whether "caused by or resulting from" means contributing cause, sole cause, or primary cause. As a result, the meaning of the phrase must be resolved in favor of the policyholder. For any exclusions listed in the PFAI section to apply, the exclusion must be the sole cause of the loss or disability in question.

Neither does the Court find an exclusion for losses caused by "sickness." The word "sickness" is not included in the exclusions enumerated in the SPD. Arguably, however, because of the non-limiting diction in the exclusion ("Certain losses are not covered . . . *including, but not limited to*, losses caused by or resulting from . . ."), there is no apparent conflict between the SPD and the policy on the issue of whether losses caused by illness are excluded. *Cf. Collinsworth v. Hartford Life & Accident Insurance Co.*, No. 3:03-CV-0457-M, 2004 WL 1217935, *2 (N.D. Tex. June 2, 2004) (Lynn, J.) (holding that an express grant of discretionary authority to one entity in the SPD does not conflict with a separate allocation of discretionary authority to another entity in the policy). Unlike the matter at issue in *Collinsworth v. Hartford Life Insurance Co.*, however, the subject matter of the proffered conflict is directly regulated by ERISA. *See* 29 U.S.C. § 1022(b) (requiring that the SPD include "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits"). The disclosure requirements of § 1022(b) would be effectively eviscerated if the Court were to allow importation of added limitations from the policy that are required by law to be included in the SPD. Therefore, the Court limits Defendant to the exclusions found in the SPD.

As a result, under the interpretation that the Court finds proper, benefits are provided if (1) the policyholder becomes completely and totally disabled, and (2) a covered accident was a contributing cause of the disability. If the sole cause of the policyholder's loss is one of the five listed exclusions, then benefits are to be denied. Preexisting conditions should not be considered in the benefits determination process unless they were the sole cause of the loss.

## C. REVIEW OF DEFENDANT'S DENIAL OF PLAINTIFF'S BENEFITS

The Court now turns to Defendant's factual determinations supporting its denial of

Plaintiff's benefits. In its February 23, 2003, letter to Plaintiff, Defendant stated:

> After a careful review of the information received, we have determined that we must decline payment of your claims as you are not permanently unable to perform the material and substantial duties of any occupation for which you are qualified by reason of education, experience or training as a result of a bodily injury caused by the accident on July 1, 2001 and resulting directly and indirectly of [sic] all other causes.

AIG Life Appx. 0150.[7] Defendant's factual determination, then, seems intertwined with its

interpretation of the policy and the SPD. Defendant found that (1) Plaintiff is not permanently

unable to perform the material and substantial duties of his occupation (2) as a result of a bodily

injury caused on July 1, 2001, (3) resulting directly and indirectly from all other causes.

Unfortunately, whether or not this factual determination satisfies the abuse of discretion

standard, it is useless to this Court in determining whether or not Plaintiff should receive

benefits. Even if taken as true, the above factual determination does not contradict Plaintiff's

claim that his fall contributed to a complete and total disability. Using this factual determination

alone, it is impossible for the court to determine whether (1) Plaintiff is completely and totally

disabled and (2) the accident on July 1, 2001, was a contributing cause to this disability.

The Court applies a *de novo* standard to the administrator's ultimate benefit conclusions

based on its factual determinations. *McClure*, 2005 WL 1214645 at *10. Based on the Court's

construction of the contract,  Defendant's factual determination does not support Defendant's

---

[7]"AIG Life Appx." refers to the pagination used by the Defendant in section B of exhibit 2 of Defendant's appendix.

denial of Plaintiff's benefits. As a result, the court finds that Defendant's denial of benefits fails *de novo* review.

Furthermore, the facts in the record do not support a denial of benefits. The February 23, 2003, letter lists the following facts as contributing to Defendant's factual determination: (1) Plaintiff's medical history documents that before July 1, 2001, he had a stroke and suffered from Central Pain Syndrome, depression and anxiety; (2) Plaintiff left work on an approved medical leave of absence prior to the fall; (3) Dr. Wong sent Plaintiff back to work full time, with no restrictions, after the fall; (4) Dr. Seals found that the July 2001 event caused no compromise or trauma that is detectable in Plaintiff's nervous system; and (5) Plaintiff's psychiatric problems were related to his work situation at Lucent and the pain caused by Central Pain Syndrome, which resulted from Plaintiff's 1986 stroke. The import of these facts will be analyzed, in turn.

The first two facts do not affect a benefits determination. The Court has concluded that preexisting conditions do not eliminate Plaintiff's coverage for the accident. As a result, these facts cannot support a denial of Plaintiff's benefits.

In contrast, the third fact may affect a proper benefits determination. According to Plaintiff's medical records, Dr. Wong examined Plaintiff on July 2, 2001, one day after his fall. AIG Life Appx. 0239. After diagnosing a problem with Plaintiff's elbow, Wong anticipated that Plaintiff would be able to return to his regular job duties on July 9, 2001. This evidence is relevant to the determination as to whether Plaintiff is "permanently and totally disabled."

The fourth fact is similarly probative. Dr. Seals stated:

[F]rom a neurological standpoint, the patient is completely able to perform all activities for which he is qualified. His only neurological deficit is that linked to his stroke in 1986 from which he was working and performing his job up to par before the July 1, 2001 event. Again, it appears that the event caused no compromise or trauma that is detectable at this point in time to his nervous system.

15

*Id.* at 0243. From this description, the Defendant could properly infer that the July 1 fall was not

a contributing cause to Plaintiff's neurological deficits. Dr. Seals' conclusion that Plaintiff is

"completely able to perform all activities for which he is qualified" is relevant to the

determination of whether Plaintiff is permanently and totally disabled. Seals qualified his

findings later in his report:

> I am asked whether or not there are other contributing conditions that might be affecting the patient's disability. My response is that his emotional and psychiatric problems are profound. Sometimes, there appears to be an intermixed functional contribution. Yet, I will leave this for the psychologist and psychiatrist to determine in that these are signs and symptoms that fall in the realm of their specialty.

*Id.* at 0244.

The fifth fact does not substantially assist Defendant in its determination of disability.

This fact is gleaned from Dr. Horwath's report, based on his review of Plaintiff's medical

records, Defendant's documents, and the definition of "Permanent Total Disability" as stated in

the policy. Although the report states that Plaintiff "has not been rendered Permanently Totally

Disabled as a result of his fall on July 1, 2001," *Id.* at 0257, the reasoning supporting the

statement is inapposite to the necessary factual determinations. To support this conclusion,

Horwath states that (1) Plaintiff suffered from neurological and psychiatric conditions that

caused him functional impairments as a result of his fall on July 1, 2001; (2) there is no

physiological mechanism for a fall on the arm to aggravate Plaintiff's Central Pain Syndrome;

and (3) Plaintiff's recurrent depression and anxiety "clearly had their onset prior to [July 1,

2001.]" *Id.* None of these statements constitute a determination as whether the July 1 incident

was a contributing cause to Plaintiff's claimed permanent and total disability. First, there is no

conclusion as to whether Plaintiff is "permanently and totally disabled." Dr. Horwath concluded

that the fall was not a contributing cause of Plaintiff's Central Pain Syndrome, but he did not

opine on whether the July 1 incident was a contributing cause of Plaintiff's other psychiatric

impairments. Because Dr. Horwath's report does not fully analyze the relevant facts, based on

the Court's interpretation of the applicable documents, it is not especially useful in evaluating

Defendant's determination.

Based on the five facts stated in Defendant's February 23, 2003, letter, Defendant cannot

deny benefits to Plaintiff. The evidence relied on by Defendant in his February 23, 2003, letter to

Plaintiff does not show that his July 1, 2001, fall was not a contributing cause of Plaintiff's

psychiatric impairments, which may have rendered him permanently and totally disabled.

Although both Dr. Wong and Dr. Seals considered physical aspects of Plaintiff's alleged

disability, neither considered Plaintiff's alleged psychiatric impairments. As a result, Defendant

has not produced sufficient evidence to justify a denial of benefits.

Because the Court holds that Defendant's denial of Plainitiff's benefits was improper

based on the Court's interpretation of the SPD and policy, it does not reach Plaintiff's arguments

concerning the propriety of Defendant's denial letter or claims procedure.


D. REMAND

The Court remands Plaintiff's claim to the plan administrator for determination of

benefits. This remedy finds support in Fifth and Ninth Circuit case law. "[W]hen, as here, the

administrator construes a plan provision erroneously, the court should not decide itself whether

benefits should be awarded but rather should remand to the administrator for it to make that

decision under the plan, properly construed." *Saffle v. Sierra Pac. Power Co. Bargaining Unit

Long Term Disability Income Plan*, 85 F.3d 455, 456 (9th Cir. 1996). "Unlike other instances. . .

17

the [defendant] has not yet had the opportunity of applying the Plan, properly construed, to [the plaintiff's] application for benefits. It should be up to the administrator, not the courts, to make that call in the first instance." *Id.* at 460; *cf. Schadler v. Anthem Life Ins.*, 147 F.3d 388, 398 (5th Cir. 1998) (remanding when the defendant denied that coverage existed before litigation, and therefore never had a occasion to determine if the claims merited coverage under the plan.)

Remand is not appropriate in all circumstances. *See*, *e.g.*, *Schadler*, 147 F.3d at 398 n.11 (stating that a remand may be inappropriate if the administrator, despite repeated opportunities to do so, refuses to make a ruling on an issue or where the administrator so delays making a decision that such delay amounts to a failure to decide the issues); *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 347 (5th Cir. 2002) (refusing to remand when there is a "complete absence" in the record of any concrete evidence supporting the defendant's determination); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2000); *Gaines v. Sargent Fletcher, Inc. Group Life Ins. Plan*, 329 F. Supp. 2d 1198, 1224 (C.D. Cal. 2004). Some courts have refused to remand in situations where, as here, the court conducted a *de novo* review. *See Grosz-Salomon*, 237 F.3d at 1163; *Gaines*, 329 F. Supp. 2d at 1224. These cases, however, are factually distinguishable from the instant situation. In *Grosz-Salomon*, the administrator used the correct standard, but came to the wrong conclusion. 237 F.3d at 1163. The court found that the administrator did not deserve a second "bite at the apple" using the same standard. *See id.* In *Gaines*, the administrator breached fiduciary duties and was deemed to have been motivated by something other than its primary duty to the plan participants. 329 F. Supp. 2d at 1224. In addition, because no additional factual determinations needed to be made, remand of the matter would have been "an empty formality." *Id.*

18

The concerns raised in *Grosz-Salomon*, *Gaines*, *Lain* and *Schadler* do not apply to this case. Because Defendant's factual analysis was based on an erroneous interpretation of the benefit plan, additional factual determinations need to be made to determine if Plaintiff qualifies for benefits. Defendant has provided some evidence to support its decision. There is no evidence of excessive delay on the Defendant's part. Therefore, the Court remands the claims to Defendant for further evaluation of Plaintiff's claims for benefits, in accordance with this opinion.

## E. ATTORNEYS' FEES

The Fifth Circuit has held that a district court may award attorneys' fees upon finding an abuse of discretion on the part of an administrator in denying benefits. *Lain*, 279 F.3d at 347 (citing *Vega*, 188 F.3d at 302). When determining whether to award attorneys' fees and costs, the district court should consider the following factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether an award of attorneys' fees against the opposing parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position." *Id.* at 347. Having considered those factors, the Court determines not to award attorneys' fees to Plaintiff.

CONCLUSION

Defendant's Motion for Summary Judgment is **DENIED**. Plaintiff's Cross-Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims are hereby remanded to Defendant for further adjudication consistent with this opinion. Plaintiff's request for attorneys' fees is **DENIED**. The Court will retain jurisdiction and instructs Defendant to determine Plaintiff's claim at the first level within 120 days of this opinion and to notify the Court of the results.

**SO ORDERED.**

November 1, 2005.

_____
Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE

20